UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **GLEN HOPE INC ET AL** | **CASE NO. 6:22-CV-06190** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **CHEVRON U S A INC ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiffs' Motion to Remand. (Rec. Doc. 11). Defendants opposed the Motion (Rec. Doc. 16), and Plaintiffs replied (Rec. Doc. 22). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Plaintiffs' motion be granted.

## Factual Background

Plaintiffs, Glen Hope, Inc. and Gwen Daigle, filed a Petition for Injunctive Relief and Damages in state court for alleged environmental damage to their property due to oil and gas operations by Defendants, Atlantic Richfield Company (ARCO), Chevron USA Inc., Chevron Pipeline Company, Chevron USA Holdings, Inc., and Hess Corporation. (Rec. Doc. 1-3). Plaintiffs trace their mineral interests

to a 1949 oil, gas, and mineral lease ("1949 OGML") between Cleophas Savoy and Amerada Petroleum Corporation ("Amerada"), which was conveyed with a 35 acre tract of land to Gwen Daigle's grandfather, Theodore Daigle. (Rec. Doc. 1-3, ¶12; Rec. Doc. 1-4, p. 59-61). In 1953, several oil and gas companies, including Amerada, ARCO, and Defendants (or their predecessors-in-interest), pooled their leasehold interests, including Amerada's 1949 OGML, to form a joint lease/production block. (Rec. Doc. 1-3, ¶13; Rec. Doc. 1-4, p. 64-94). Thereafter, pursuant to subsequent agreements with the landowner, the operator, Tidewater, constructed a processing and disposal facility and later a saltwater waste disposal well, which required leasing a certain area of the tract for use in disposal operations. (Rec. Doc. 1-3, ¶14-16). Plaintiffs alleged that after operations were discontinued in 1982, the disposal facility and waste pits were improperly closed resulting in damage and contamination to their property. (Rec. Doc. 1-3, ¶17-43). Plaintiffs sued Defendants as parties (and/or as successors-in-interest) to the 1953 Operating Agreement. (Rec. Doc. 1-3, ¶44-46).

    The Chevron Defendants, with consent of Hess Corp., removed the case on the grounds of diversity jurisdiction. (Rec. Doc. 1). The removing Defendants contend they are diverse from Glen Hope, Inc. (a Texas citizen) and Gwen Daigle (a Louisiana citizen). They contend that ARCO, a Texas citizen which would otherwise destroy diversity, was improperly joined. Plaintiffs filed the instant Motion to

Remand asserting that they have stated viable claims against ARCO, such that ARCO is a proper defendant which destroys diversity jurisdiction. Thus, the key question is whether Plaintiffs have viable claims against ARCO.

## Law and Analysis

### I. Law applicable to removal, remand, and improper joinder.

The federal district courts have original jurisdiction over cases in which the parties are diverse in citizenship and the amount in controversy exceeds $75,000, pursuant to 28 U.S.C. §1332. 28 U.S.C. §1441 and §1446 provide the procedural mechanism by which a party may remove a matter from state court to a federal district court.

Generally, upon the filing of a motion to remand, the removing party bears the burden to prove that federal jurisdiction exists. *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1408 (5th Cir. 1995). Thus, Defendants, as the party seeking to invoke federal diversity jurisdiction under §1332, bear the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000. *Garcia v. Koch Oil Co. of Texas Inc.,* 351 F.3d 636, 638 (5th Cir. 2003).

In this case, Defendants contend that ARCO, a non-diverse defendant, was improperly joined. "When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper." *Smallwood v.*

*Illinois Cent. R. Co.,* 385 F.3d 568, 576 (5th Cir. 2004) (en banc). "To demonstrate improper joinder of resident defendants, the removing defendants must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Gasch v. Hartford Acc. & Indem. Co.,* 491 F.3d 278, 281 (5th Cir. 2007), quoting *Crockett v. R.J. Reynolds Tobacco Co.,* 436 F.3d 529, 532 (5th Cir.2006). Defendants in this case do not contend actual fraud in the pleadings. Rather, Defendants rely upon the second category of improper removals. As such, the threshold question is whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* citing *Smallwood, supra.* In deciding whether a party was improperly joined, the court must resolve all contested factual issues and ambiguities of state law in favor of the plaintiff. *Id.* citing *Guillory v. PPG Indus., Inc.,* 434 F.3d 303, 308 (5th Cir.2005).

While the court has discretion to "pierce the pleadings and consider summary judgment-type evidence in the record" in determining whether joinder was improper, it "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir.2004) (citing *Travis,* 326 F.3d at 648-49.). Thus, "although the type of inquiry into the evidence is similar to the summary

4

judgment inquiry, the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard." *Id.* Any contested issues of fact and any ambiguities of state law must be resolved in the plaintiff's favor. *Id*. The Court "must also take into account the 'status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non-diverse defendant." *Id.* at 334-36; *see also Travis*, 326 F.3d at 650-51 (noting that when discovery was ongoing "simply pointing to the plaintiff's lack of evidence at stage of the case is insufficient" to establish improper joinder). At this stage of the litigation the plaintiff is not expected to produce evidence sufficient to survive a motion for summary judgment; he must only show a "reasonable basis for the [] court to predict that the plaintiff might be able to recover." *Smallwood*, 385 F.3d at 573; *see also Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir.2005) (explaining "[w]e do not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so").

    **II.**     **<u>Whether Plaintiffs have asserted viable claims against ARCO.</u>**

Plaintiffs identify four claims against ARCO, any of which they contend support that ARCO is a properly joined defendant.

5

### A. <u>ARCO's interest in the 1949 OGML.</u>

Plaintiffs first contend ARCO is liable pursuant to the terms of the 1949 OGML and the 1953 Operating Agreement in which Amerada pooled its lease interests (including the 1949 OGML) with other oil companies, including ARCO, to create a "Joint Property." Pursuant to the terms of 1953 Operating Agreement, ARCO agreed with Amerada and other Defendants (or their predecessors-in-interest) to develop and operate the "Joint Property," which was defined as the described lands and leases identified in the attached exhibit, which included the 1949 OGML. (Rec. Doc. 1-4, p.64-66; 89). ARCO was assigned a 20.4433% ownership interest in the Joint Property, and Tidewater was the designated operator. (Rec. Doc. 1-4, p. 66-67). Each party to the 1953 agreement, including ARCO, agreed to bear its proportionate share of costs and expenses for operation and development of the Joint Property. (Rec. Doc. 1-4, p. 67, ¶VI; p. 72, ¶X). The non-operator parties, including ARCO, were given certain access to the Joint Property and inspection rights. (Rec. Doc. 1-4, p. 76 ¶XVII). ARCO agreed with the other signatories to "in proportion to their respective liabilities for operating costs, [] bear the cost of damages that may be incurred either to the Joint Property or to others in connections with operations hereunder where protection against such damage is not covered by insurance." (Rec. Doc. 1-4, p. 76 ¶XVIII).

Plaintiff cites Louisiana Mineral Code articles 127[1] and 128[2] as authority for assignment of leases and the assignee's obligations to perform in accordance with the terms of the lease. The terms of the 1953 Operating Agreement explicitly provide that the parties, including ARCO, are proportionately liable for damages incurred to the Joint Property in connection with the operations. Thus, the Court agrees that Plaintiffs' have stated a viable claim against ARCO, even if they do not ultimately prevail on the claim.

Defendants argue that ARCO was not privy to the 1949 OGML and further rely on language in the 1953 Operating Agreement stating that non-operators were not to be considered collectively and that the rights and obligations of each are individual. (Rec. Doc. 1-4, p. 76 ¶XVIII). Defendants rely upon the affidavit of an individual who attested to having reviewed public records regarding the tract(s) in question and concluding that the parties to the Operating Agreement did not cross-assign the 1949 OGML. The Court attributes minimal value to the affidavit, which seems to state a legal conclusion regarding whether the parties cross-assigned interests. Far more persuasive is the explicit language of the 1953 Operating

---

[1] The lessee's interest in a mineral lease may be assigned or subleased in whole or in part. La. Stat. Ann. § 31:127

[2] To the extent of the interest acquired, an assignee or sublessee acquires the rights and powers of the lessee and becomes responsible directly to the original lessor for performance of the lessee's obligations. La. Stat. Ann. § 31:128

Agreement, which provides that ARCO is proportionately liable for damages to the Joint Property, which includes the 1949 OGML. The Court need not determine the viability of ARCO's purported defense to Plaintiffs' claims. The Court need only decide whether Plaintiffs have stated a reasonable basis on which they might recover against ARCO. The Court finds that Plaintiffs have met this burden. Stated differently, Defendants have not overcome their burden to show that Plaintiffs have not stated a reasonable basis for recovery against ARCO. Accordingly, ARCO was properly joined and diversity jurisdiction does not exist.

### B. **ARCO's solidary liability to restore leased premises.**

Plaintiffs further rely upon Louisiana Civil Code articles regarding the obligations of lessees to restore leased premises (La. C.C. art. 2683; see also La. R.S. 31:128). In *Sweet Lake Land & Oil Co. LLC v. Exxon Mobil Corp*., another division of this Court considered the defendant oil company's argument that it, as sublessee, did not have privity of contract with the lessor and therefore could not be liable for damages to the property. *Sweet Lake Land & Oil Co. LLC v. Exxon Mobil Corp.,* No. 2:09 CV 1100, 2011 WL 5825791 (W.D. La. Nov. 16, 2011). The Court rejected the argument based on Mineral Code art. 128 and Louisiana lease law regarding the indivisibility of obligations:

> The provisions of the Mineral are supplementary to the Louisiana Civil Code. La. R.S. 31:2. Accordingly, the Civil Code articles dealing with ordinary leases apply to oil and gas leases unless negated by a provision of the Mineral Code.

Article 1815 of the Louisiana Civil Code provides that "[a]n obligation is indivisible when the object of the performance, because of its nature or because of the intent of the parties, is not susceptible of division." Louisiana Courts have held that an obligation is indivisible where the performance of the obligation cannot be divided or when partial performance would be of little or no use to the obligee. *See* 5 Saul Litvinoff, *Louisiana Civil Law Treatise, Law of Obligations* § 9.2 (2011). Accordingly, the obligation to build a swimming pool or a house is indivisible. *S & W Investment Co. v. Otis W. Sharp and Son, Inc.,* 247 La. 158, 170 So.2d 360 (1964).

Where an obligation is divisible, solidarity "shall not be presumed" but arises only from a clear expression of the parties' intent or from the law. La. C.C. art. 1796. Where an obligation is indivisible, on the other hand, all obligors must be held solidarily liable for the full performance of the obligation. La. C.C. art. 1818.

The obligation to restore the leased premises is, by its nature, an indivisible obligation. Property is either restored or it is not. A well cannot be partially plugged and abandoned. *See Muslow Oil and Gas, Inc. v. Rife Oil Properties, Inc.,* No. 427,920 c/w 427,921, 1st JDC, Caddo Parish, Louisiana ("The obligation of plugging and abandonment of wells is a joint obligation which is indivisible and, in accordance with Civil Code Article 1789, is a solidary obligation among mineral lessees and their assigns"). Likewise, hazardous materials placed into a pit must be removed, or the property remains polluted. Moreover, a partial restoration of property would be unlikely to satisfy either the surface owner or the state.

…

Thus, it appears that the language in Article 128 limiting the liability of a partial assignee or sublessee of a mineral lease "to the extent of the interest acquired" does not supersede the Civil Code provisions dealing with divisible and indivisible joint obligations. Rather, it simply makes clear that Article 128 does not make each owner of an undivided interest in a mineral lease liable for more than its share of the divisible obligations of the lease, such as the obligation to pay rent or royalty. Accordingly, Noble must be held liable *in solido* with its predecessors and successors in title for the full remediation of the property according to the terms of each lease it acquired.

9

*Id*. at * 5.

The court further held that art. 128 (effective in 1975) could be applied retroactively to leases conveyed prior to the effective date. *Id*. at *4. Also helpful to the instant case is Judge Minaldi's finding that an implied duty to restore the surface of property subject to a mineral lease existed despite the absence of an explicit obligation in the lease to remediate. *Id*. at *7. The 1949 OGML in this case did not contain an explicit provision regarding remediation.

The *Sweet Lake* opinion is therefore instructive on multiple levels, and, notably, its logic influenced the Louisiana Supreme Court in deciding a similar issue. *Gloria's Ranch, L.L.C. v. Tauren Expl., Inc.,* 2017-1518 (La. 6/27/18), 252 So. 3d 431, 443. This Court likewise agrees that the Mineral Code and Louisiana lease law impose obligations for restoration upon mineral lease assignees and sublessees, and that lessors may seek to recover applicable damages directly from such parties. Defendants argue ARCO was not assigned an interest in the lease. The Court declines to engage in an in-depth interpretation of the language in the 1953 Operation Agreement and whether the parties perfected a cross-assignment. It is sufficient that Plaintiffs' claims against ARCO pursuant to the language imposing proportionate liability for Joint Property damage are reasonable. Accordingly, Plaintiffs have viable claims against ARCO on these additional grounds.

### C. <u>Additional grounds for ARCO's liability.</u>

Plaintiffs next assert ARCO's liability under Louisiana tort law, specifically La. C. art. 2317 and 2322, pursuant to which the owner or custodian of a thing or building are liable for damage caused by its ruin, vice, or defect when the owner or custodian knew or should have known of the damage-causing ruin, vice or defect and failed to exercise reasonable care to prevent the damage. Plaintiffs contend the 1953 Operating Agreement renders ARCO a joint-custodian of the allegedly damage-causing pit.

Plaintiffs last assert claims against ARCO for violations of the Louisiana Environmental Quality Act (LEQA), which authorizes civil suits by any person having an interest against any person allegedly in violation of the Act. La. R.S. 30:2026. Plaintiffs' Petition accuses ARCO of violating La. R.S. 30:2076 of the LEQA, which prohibits discharge of waste or water pollution into the waters of the state.

Defendants contend that ARCO cannot be held liable as a non-operator under either tort or LEQA theories since it did not have custody or control over the saltwater facility or pit. Because the Court finds Plaintiffs stated viable claims against ARCO based on the terms of the 1953 Operating Agreement and Louisiana lease law, the Court declines to consider these additional grounds, except to highlight that, pursuant to the 1953 Operating Agreement, ARCO proportionately owned

11

"each well on the Joint Property, the equipment and material therein…" (Rec. Doc. 1-4, p. 66 ¶V). Because diversity jurisdiction thus fails, the Court defers to the state court to which this matter should be remanded for consideration of ARCO's defenses to these claims.

## Conclusion

For the reasons discussed herein, the Court recommends that Plaintiffs' Motion to Remand (Rec. Doc. 11) be GRANTED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d

1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

 THUS DONE in Chambers, Lafayette, Louisiana on this 1st day of March, 2023.

               _____
               CAROL B. WHITEHURST
               UNITED STATES MAGISTRATE JUDGE